OPINION
{¶ 1} Defendant-appellant Richard A. Doakes appeals from his conviction and sentence, following a no-contest plea, for Carrying a Concealed Weapon. Doakes contends that the trial court erred in overruling his motion to suppress evidence upon the ground that it was obtained as the result of an unlawful search and seizure. We *Page 2 
conclude that the search and seizure of the evidence was not unlawful. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} Dayton Police Officer John J. Beall was patrolling an area, in a marked cruiser, in late August, 2007, in the early afternoon, when he overheard a radioed report of a detective in an unmarked car "that he observed a subject that was wanted for Aggravated Robbery, a firearm used in the alley at the rear of the twelve hundred block of West Third Street." Beall testified that the reporting detective "was observing the subject as he spoke to the dispatcher." The report advised that the warrant was for Aggravated Robbery "and a firearm was used and he advised us to use caution." Beall responded to the scene within one to two minutes of the report. Another officer also responded to the scene.
 {¶ 3} The report had stated that: "the subject's name was David Richardson and he was a Black male and he was wearing a white sleeveless t-shirt." There was no other description.
 {¶ 4} When Beall responded to the scene, he observed two black men, both of whom were wearing white, sleeveless t-shirts. Beall approached the man who was later identified as Doakes. The other officer approached the other man, who was later identified as the subject of the warrant. The two officers were approaching from different directions. What happened next was described by Beall as follows:
 {¶ 5} "Q. What did the two subjects do when your cruisers entered the area?
 {¶ 6} "A. They both began to walk in different directions. *Page 3 
 {¶ 7} "Q. What did you do in response?
 {¶ 8} "A. At that point I got out of my cruiser, drew my firearm and advised both of them to get on the ground.
 {¶ 9} "Q. Did they comply?
 {¶ 10} "A. Yes.
 {¶ 11} "Q. What did you do next?
 {¶ 12} "A. I approached the subject that was closer, closest to me which was Mr. Doakes. I advised him to put his hands behind his back. As I was near him he did and as I was handcuffing him he advised me that he had a firearm in his right front pocket.
 {¶ 13} "* * *
 {¶ 14} "Q. Thank you. What did you do after the defendant informed you that he was carrying a firearm?
 {¶ 15} "A. I handcuffed him, I had him stand up and I recovered the firearm."
 {¶ 16} Beall also recovered a "large" bag of marijuana and $685 in cash from Doakes's person. Doakes was arrested and charged with Carrying a Concealed Weapon. (If any charges were filed based upon the marijuana, they are not involved in this appeal.)
 {¶ 17} Doakes moved to suppress the firearm, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court overruled the motion to suppress. Thereafter, Doakes pled no contest to Carrying a Concealed Weapon, was found guilty, and was sentenced accordingly.
 {¶ 18} From his conviction and sentence, Doakes appeals.
 II *Page 4 {¶ 19} Doakes's sole assignment of error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AS THE STOP, ARREST, AND SUBSEQUENT STATEMENTS WERE AN ILLEGAL SEARCH AND SEIZURE UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS APPLIED TO THE STATES VIA THE FOURTEENTH AMENDMENT."
 {¶ 21} Despite the breadth of Doakes's assignment of error, he concedes in his brief that: "Reasonable suspicion existed for an investigatory stop to take place." We agree. The fact that Doakes and the other man were both found in the alley one to two minutes after a report that a person seen in the alley was wanted on a warrant for Aggravated Robbery with a firearm, both of whom answered the general description of that person, supported a reasonable suspicion that either of the men might be the person subject to the warrant, justifying a brief stop to determine whether, in fact, either of them was the person subject to the warrant.
 {¶ 22} Because the warrant was for Aggravated Robbery with a firearm, considerations of officer safety justified handcuffing each suspect during the investigative stop. State v. Bradley (March 11, 1993), Franklin App. No. 92AP-1496; State v. Boykins (October 29, 1999), Hamilton App. No. C-990101.
 {¶ 23} In his brief, Doakes contends that once the men were subdued and the officers were no longer in fear for their safety, "[n]either officer inquired as to the identity of the suspects at this point, although they testified that they knew there was only a warrant for one suspect." We find no support in the record for this factual proposition. Beall testified that as he was handcuffing Doakes, Doakes volunteered that he had a *Page 5 
handgun in his pocket. This contradicts the proposition that there was a delay after the handcuffing that might be deemed to have constituted an unreasonable prolongation of the detention.
 {¶ 24} Obviously, once Doakes volunteered that he had a handgun in his pocket, Beall was justified in retrieving it for his safety. The circumstances leading from that discovery to the discovery and retrieval of the bag of marijuana and the $685 in cash are not clear from this record, but the only evidence material to the conviction from which this appeal is taken — Carrying a Concealed Weapon — is the handgun, and we conclude that the search and seizure of the handgun was not unlawful.
 {¶ 25} Doakes's sole assignment of error is overruled.
 III {¶ 26} Doakes's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur. *Page 1